# EXHIBIT 11



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/954,755 | 09/30/2004 | Jialin Zou | LUCW:0015 Kong 11-6 | 4332 |

48671      7590      12/10/2008
FLETCHER YODER (LUCENT)
P.O. BOX 692289
HOUSTON, TX 77069

| EXAMINER |
|---|
| LIM, STEVEN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2617 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/10/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| Office Action Summary | Application No. | Applicant(s) |
|---|---|---|
| | 10/954,755 | ZOU ET AL. |
| | Examiner | Art Unit |
| | STEVEN LIM | 2617 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>02 September 2008</u>.
2a) ☒ This action is **FINAL**.    2b) ☐ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-5,7-14 and 16-20</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1-5,7-14 and 16-20</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

Application/Control Number: 10/954,755                              Page 2
Art Unit: 2617

## DETAILED ACTION

### *Claim Rejections - 35 USC § 103*

1.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

2.      The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

   1.   Determining the scope and contents of the prior art.
   2.   Ascertaining the differences between the prior art and the claims at issue.
   3.   Resolving the level of ordinary skill in the pertinent art.
   4.   Considering objective evidence present in the application indicating obviousness or nonobviousness.

3.      Claims 1-3, 5-12, 14-16, and 20 are rejected under 35 U.S.C. 103(a) as being unpatentable over Gholmieh et al. (US 20030129989) in view of Servais et al. (US 6141388) and Lau et al. (US 20040151122) and further in view of Seo et al. (US 20030123396).

4.      Regarding Claims 1 and 10, Gholmieh et al. discloses generating quality metrics (channel conditions) from a decoding process (Paragraphs 17-19) for a received channel quality indicator (CQI), including short term soft decision quality metrics (estimate of the signal strength of the pilot signal of the base station, Paragraph 19),

adjusting CQI channel configuration (setting data rate and power level through a modulator dependent on the received CQI, Paragraphs 19 and 24) however, Gholmieh et al. fails to disclose long term soft decision quality metrics generated by filtering frame based quality metrics over a plurality of frame, comparing the quality metrics to a quality setting, and determining whether to dynamically adjust a CQI channel configuration based on the comparison.

5. In an analogous art, Servais et al. discloses receiving signal quality estimates and long term soft decision quality metrics generated by filtering frame based quality metrics over a plurality of frame (Col. 4, Lines 49-59), which enable averages to be provided.

6. In an analogous art, Lau et al. discloses comparing a metric (encoded packet error rate) against a quality setting (threshold) and based on this comparison adjusting a CQI channel configuration (data rate, Paragraph 30), which enables changes in the system based on received information.

7. In an analogous art, Seo et al. discloses an additional state for the CQI differential bit and interpreting that state as a hold value (CQ and channel environment is unchanged, Paragraph 96), which enables the system to save bandwidth in transmitting unnecessary information (Paragraph 96).

8. It would have been obvious to one having ordinary skill in the art at the time of invention was made to generate long term soft decision metrics over a plurality of frames in order to obtain an averaged value allowing for a broader interpretation of the data.

Application/Control Number: 10/954,755                                                          Page 4
Art Unit: 2617

9.      It would also have been obvious to one having ordinary skill in the art at the time of invention was made to compare a metric against a quality setting and then adjusting CQI channel configuration in order to allow the system to react to changes in the system's environment.

10.     It would also have been obvious to one having ordinary skill in the art at the time of invention was made to allow for an additional CQI state that represents no change in the CQI to allow the system to monitor all possible situations that can occur to a channel environment including no change to the environment.

11.     Regarding Claims 2 and 11, Gholmieh et al. further discloses that a R-CQICH has two modes of operation including a full and differential mode (Paragraph 31), however Gholmieh et al. fails to disclose comparing the long term quality metric to a threshold quality setting.

12.     In an analogous art, Lau et al. discloses comparing a metric (encoded packet error rate) against a threshold quality setting (threshold, Paragraph 30), which enables changes to occur when the system is performing out of normal bounds.

13.     It would have been obvious to one having ordinary skill in the art at the time of invention was made to compare a metric against a threshold quality setting in order to allow the system to react to changes in the system's environment.

14.     Regarding Claims 3 and 12, Gholmieh et al. further discloses that the CQI channel configuration comprises a reverse link outer loop power control setting (reverse link power level, Paragraph 18), however Gholmieh et al. fails to disclose comparing the short-term quality metric to a threshold quality setting.

Application/Control Number: 10/954,755  Page 5
Art Unit: 2617

15. In an analogous art, Lau et al. discloses comparing a metric (encoded packet error rate) against a threshold quality setting (threshold, Paragraph 30), which enables changes to occur when the system is performing out of normal bounds.

16. It would have been obvious to one having ordinary skill in the art at the time of invention was made to compare a metric against a threshold quality setting in order to allow the system to react to changes in the system's environment.

17. Regarding Claims 5 and 14, Gholmieh et al. further discloses generating the short-term quality metrics by accumulating a plurality of quality information from the decoding process over a CQI frame (puncturing of R-CQICH may be for several time slots in a time frame where each time slot may have a different power level, Paragraph 31).

18. Regarding Claim 7, Gholmieh et al. further discloses generating a plurality of erasures for differential reports based on CQI differential bit decision metric (negative increment value of most recently transmitted full CQI value becomes current CQI, Paragraph 19).

19. Regarding Claims 8 and 16, Gholmieh et al. further discloses performing the method at a base station in a wireless communication system (Paragraph 16 and 19).

20. Regarding Claim 9, Gholmieh et al. further discloses transmitting an adjustment for the CQI channel configuration to a wireless unit (base station packet data including data rate and power levels of the reverse and forward links transmitted to the mobile station, Paragraph 18).

21. Regarding Claim 20, Gholmieh et al. further discloses generating the short-term quality metrics however Gholmieh et al. fails to disclose generating long term quality metrics by filtering the plurality of quality metrics over a period of more than one frames.

22. In an analogous art, Servais et al. discloses receiving signal quality estimates and long term soft decision quality metrics generated by filtering frame based quality metrics over a plurality of frame (Col. 4, Lines 49-59), which enable averages to be provided.

23. It would have been obvious to one having ordinary skill in the art at the time of invention was made to generate long term soft decision metrics over a plurality of frames in order to obtain an averaged value allowing for a broader interpretation of the data.

24. Claims 17-19 are rejected under 35 U.S.C. 103(a) as being unpatentable over Gholmieh et al. (US 20030129989) in view of Lau et al. (US 20040151122) and further in view of Furuskar et al. (US 20020102983).

25. Regarding Claim 17, Gholmieh et al. discloses generating soft decision quality metrics (channel quality obtained from CQI, Paragraphs 17-19) from a decoding process (Paragraph 17-19) for a received channel quality indicator, including short term quality metrics (estimates of the signal strength of the pilot signal, Paragraph 19) and adjusting a reverse link outer loop power control setting  (reverse link power level through a modulator, Paragraph 18 and 24) however, Gholmieh et al. fails to disclose the soft decision metrics are generated using erasure metrics accumulated over a

Application/Control Number: 10/954,755 Page 7
Art Unit: 2617

frame, comparing the quality metrics to a threshold quality setting and determining whether to dynamically adjust a CQI channel configuration based on the comparison.

26.	In an analogous art, Furuskar et al. discloses generating channel quality indications by using erasure metrics accumulated over a frame (using frame erasure rate to determine radio channel quality, Paragraph 37), which allows the system to implement a standard form of determining a channel's quality.

27.	In an analogous art, Lau et al. discloses comparing a metric (encoded packet error rate) against a threshold quality setting (threshold) and based on this comparison adjusting a CQI channel configuration (data rate, Paragraph 30), which enables changes in the system based on received information.

28.	It would have been obvious to one having ordinary skill in the art at the time of invention was made to generate the channel quality metrics using a frame erasure rate in order to use standard channel quality indicators and to compare a metric against a threshold quality setting and then adjusting CQI channel configuration in order to allow the system to react to changes in the system's environment.

29.	Regarding Claim 18, Gholmieh et al. further discloses that a R-CQICH has two modes of operation including a full and differential mode (Paragraph 31).

30.	Regarding Claim 19, Gholmieh et al. further discloses transmitting an adjustment for the CQI channel configuration to a wireless unit (base station packet data including data rate and power levels of the reverse and forward links transmitted to the mobile station in order to maintain channel conditions, Paragraph 18).

Application/Control Number: 10/954,755                                                                 Page 8
Art Unit: 2617

31. Claims 4 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable over Gholmieh et al. (US 20030129989), Servais et al. (US 6141388), Lau et al. (US 20040151122), and Seo et al. (US 20030123396) as applied to claims 1 and 10 above, and further in view of Yun et al. (US 20030206541).

32. Regarding Claims 4 and 13, Gholmieh et al. decoding a received channel CQI, however Gholmieh et al. fails to disclose the CQI channel configuration comprises a repetition factor and the comparison comprises comparing one of the long-term quality metrics to the threshold quality setting.

33. In an analogous art, Yun et al. discloses a CQI channel configuration including a repetition factor (Paragraph 46), which enables an accurate detection of the switching intention of a mobile station (Paragraph 53).

34. In an analogous art, Lau et al. discloses comparing a metric (encoded packet error rate) against a threshold quality setting (threshold, Paragraph 30), which enables changes to occur when the system is performing out of normal bounds.

35. It would have been obvious to one having ordinary skill in the art at the time of invention was made to include a repetition factor in the CQI channel configuration to allow proper switching of a mobile station from one base station to another and to compare a metric against a threshold quality setting in order to allow the system to react to changes in the system's environment.

Application/Control Number: 10/954,755 Page 9
Art Unit: 2617

## Response to Arguments

Applicant's arguments with respect to claims 1-16 and 20 have been considered but are moot in view of the new ground(s) of rejection.

Applicant's arguments filed 9/2/2008 have been fully considered but they are not persuasive. Regarding applicant's argument towards claims 17-19, Examiner disagrees because the limitations as broadly claimed are disclosed by Gholmieh, Lau and Furuskar. The limitation of soft decision metrics as broadly interpreted only calls for current network conditions which is disclosed by Gholmieh as channel conditions to which data rate and power level are elements of (Paragraph 17-19) where the metrics are generated using erasure metrics which is disclosed by Furuskar et al. as a frame erasure rate used to determine radio channel quality (Paragraph 37). Therefore the limitations as broadly claimed and interpreted are disclosed by the references as listed above in the Final Rejection.

## Conclusion

Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

Application/Control Number: 10/954,755																																											Page 10
Art Unit: 2617

    A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Steven Lim whose telephone number is (571) 270-1210.  The examiner can normally be reached on Mon-Thurs 9:00am-4:00pm EST.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Lester Kincaid can be reached on (571)272-7922.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 10/954,755                                                                                   Page 11
Art Unit: 2617

      Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/S. L./
Examiner, Art Unit 2617

/Lester Kincaid/
Supervisory Patent Examiner, Art Unit 2617