**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | CASE NO. 6:20-CV-533-ADA |
| BRAZOS LICENSING AND | § | CASE NO. 6:20-CV-534-ADA |
| DEVELOPMENT, | § | CASE NO. 6:20-CV-535-ADA |
| | § | CASE NO. 6:20-CV-536-ADA |
| Plaintiff, | § | CASE NO. 6:20-CV-537-ADA |
| | § | CASE NO. 6:20-CV-538-ADA |
| | § | CASE NO. 6:20-CV-539-ADA |
| v. | § | CASE NO. 6:20-CV-540-ADA |
| | § | CASE NO. 6:20-CV-541-ADA |
| HUAWEI TECHNOLOGIES CO. LTD., | § | CASE NO. 6:20-CV-542-ADA |
| ET AL. | § | CASE NO. 6:20-CV-543-ADA |
| | § | CASE NO. 6:20-CV-544-ADA |
| Defendants. | § | |

## JOINT MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER

**TO THE HONORABLE COURT:**

The parties jointly move for entry of a protective order. While the parties have reached agreement on most items, certain disputes remain.  Each parties' respective positions are below. A proposed protective order with the disputes highlighted is attached as Appendix A.

### Plaintiff WSOU's Position

While the parties have reached agreement on most of the issues, five issues remain:

(1) Access by Outside Counsel (Sections 5(a))

(2) Resolution of Disputes for Disclosed Experts (Section 5(e)

(3) Source Code Handling (Section 10)

(4) Who can Access Designated Material (Section 15)

(5) Retaining Designated Material (Section 22)

WSOU sought to avoid a dispute and Court involvement by proposing language that **_opposing_** parties had recently agreed to in negotiations. *See* e.g., *WSOU Investments LLC v.*

*Microsoft Corporation*, Case No. 6:20-cv-454, Dkt. 68 (WDTX March 29, 2021) (Joint Motion), which the Court subsequently entered at Dkt. 71 (WDTX March 30, 2021) (Order granting protective order; the identical order was entered in Case Nos. -454 through -465). WSOU did not come up with this language on its own; rather, it was part of a negotiated process. The WSOU-Microsoft Agreed Language was presented as an example of how reasonable parties working with one another could agree. There is nothing controversial about the WSOU-Microsoft Agreed Language, and, most of the proposed language is typical in agreed protective orders.

## I.       Section Sections 5 (a) – Access by Outside Counsel

WSOU's proposal for sections 5(a) is identical to the WSOU-Microsoft Agreed Language. *See* 6:20-cv-454, Dkt. 71 at 4 (referencing the same section numbers).

The proposal in Section (a) reasonably allows "outside counsel retained for purpose of this litigation" to review material ***before*** they appear. This would include, for example, trial counsel and appellate counsel. It would also cover other outside attorneys at the same firm (as counsel of record) who have been retained but have not yet appeared.

Huawei's refusal for such language is surprising – given that WSOU understood that Huawei *wanted* other Huawei counsel not of record to review protected material – as Huawei argued at the case management conference.  As discussed during the case management conference, when addressing disputes such as this, Courts often had no problems with ***additional*** counsel reviewing protected material – providing they agreed to be bound by the protective order – something already required by current protective order. In particular, in the EDTX, Judge Gilstrap ruled that confidential information could be shared with other non-appearing attorneys – providing the following:

> "*if and as soon as* [IPR counsel - Finnegan] files a notice with this Court certifying (1) that it is or reasonably expects to be counsel of record for [Defendant] in a Related Proceeding as defined by the Protective Order1 and (2) that Finnegan, Finnegan's attorneys, and Finnegan's employees will strictly comply with all of the provisions of the Protective Order in this case and this Order."

*Luminati Networks, Ltd. v. Bi Science, Inc. et al.* Case No. 2:18-cv-483-JRG (E.D. Tex) (Dkt. 81) (April 24, 2019).   This specific case was discussed at the case management conference.  The WSOU-Microsoft Agreed language simply reflects this reality.  By the express provisions of the protective order, all persons *accessing* material pursuant thereto must be bound by its provisions.  WSOU and Microsoft simply agreed that such outside counsel who have not appeared must also be "retained for purpose of this litigation." Again, both WSOU and Microsoft agreed to the language now presented to correct these problems. Huawei has not explained to WSOU why it objects.

## II.        Resolution of Disputes for Disclosed Experts– Section 5(e)

For Section 5(e), WSOU again borrowed from the WSOU-Microsoft Agreed language in an attempt to avoid disputes. *See* 6:20-cv-454, Dkt. 71 at 5 (referencing the section (e)). Huawei previously agreed with WSOU's proposal here, but then later backed away in later iterations.

The timeline for resolution is identical to the WSOU/Microsoft's timelines (7 days before access, 3 days for a prompt meet and confer, and 3 days for a motion).  Huawei has provided WSOU no reason why it believes the quick resolution schedule is inappropriate or unworkable. Indeed, Huawei has already stipulated to protective orders with faster timelines than those being proposed by WSOU here. *See e.g., Agis Software Development, LLC v. Huawei, Inc. et al*, Case No. 2:17-cv-517-JRG (Lead Case)(E.D. Tex.)(Apr. 9, 2018) ("Within seven (7) days of the disclosure . . . the producing Party may notify the receiving Party in the writing that it objects to disclosure of Protective Material.")("If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court with ten (10) days of the notice . . . ").

There should also be nothing objectionable about WSOU's proposal that a party can disclose materials to a proposed expert after the time period has expired (in the last portion of Section 5(e)), for example, when there is no objection.  Such a recitation explicitly states what is already understood.  This in the WSOU-Microsoft Agreed language. Huawei has not explained why it is objectionable.

### III.      10, Source Code Handling

Again, having already been through protective order negotiations with a sophisticated party (Microsoft), WSOU simply proposed the WSOU-Microsoft Agreed Language.  *See* 6:20-cv-454, Dkt. 71 at 7-11 (referencing Section 10).  These proposals are reasonable.

#### a.      Three Computers Across the Cases as Opposed to 12 computers – One for Each Case – Section 10(a)

Rather than have one individual computer per case (or 12 computers), WSOU proposed to a reasonable three computers _across cases_ using the WSOU-Microsoft Agreed Language.  This set-up has worked well for the ongoing source code review in the cases between WSOU and Microsoft. One of the reasons this set-up works well is that it allows for redundant access to code for a particular case. The failure of one source code computer (which has happened many times) does not prevent the ability to review code for case – since a redundant computer exists.  Redundant computer is common in cases.  This is why WSOU and Microsoft reasonably agreed to them in the WSOU-Microsoft Agreed Language.

There is no reason for Huawei to have 12-seprate computers and no redundancy.  It is not only inefficient, but also guarantees that once a computer fails (as they do) that review cannot resume for a particualr case until a new machine is put in-place.

#### b.      Minimum Display Screen Size of Seventeen-Inches – Section 10(a)

There is nothing remarkable about WSOU's requests that the display screen or monitor be at least seventeen inches.  This prevents Huawei from providing an unreasonably small screen size of, for example, thirteen inches (or even smaller).  Parties routinely agree to such screen sizes. That's why it was included in the WSOU-Microsoft Agreed Language. Other sophisticated parties, namely Google, have also agreed to seventeen inches in multiple cases. *See* e.g., 13 Cases: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex., June 14, 2019)(Judge Payne). Huawei has not explained to WSOU why the monitor size being at least seventeen inches in size is objectionable.

### c.   Computers located at Offices of Outside Counsel in Dallas

WSOU has reasonably suggested – as parties often do – that source code be made available *at Outside Counsel's office*. Here, Huawei' lead counsel, Jason Cook, is the managing partner of the McGuire Woods's office in Dallas. There is no reason why Mr. Cook could not arrange for Huawei's source code to be reviewed in Dallas – just like Huawei has done in multiple prior cases. Huawei has *stipulated* to production of source code at the office of its outside counsel in multiple cases. Examples follow.

<u>Super Interconnect Technologies, LLC v. Huawei Device Co. Ltd, et al.</u>[1]

> The stand-alone computer(s) may only be located within the continental United States at the offices of the producing Party's outside counsel.

<u>Harris Corp. v. Huawei Devices USA, Inc. et al.</u> [2]

> Except as provided in paragraph 10(i) below [dealing, for example with Court proceeding and depositions], the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel in the United States. . . .  Any Source Code made available by Defendants at the offices of their counsel shall be made available at Ropes & Gray LLP [counsel for Huawei], 1900 University Avenue, 6th Floor, East Palo Alto, CA 94303

<u>Lemaire Illumination Technologies, LLC v. Huawei Devices USA, Inc, et al.</u>[3]

> Additionally, except as provided in paragraph 10(l) below, the stand-alone computer(s) may be located only at the offices of the producing Party's outside counsel in Texas;

<u>American Patents LLC v. Huawei Device USA Inc. et al.</u> [4]

> Additionally, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel;

---

[1] Case 2:18-cv-00462, Dkt. 39 (E.D. Tx.)(April 9, 2019)(entered order; the stipulation was submitted ats Dkt. 38 on April 5, 2019).
[2] Case 2:18-cv-00439, Dkt. 53 (E.D. Tx.(April 16, 2019)(entered order; the stipulation was submitted ats Dkt. 52 on April 12, 2019).
[3] Case 2:18-cv-00353, Dkt. 37 (E.D. Tx.)(April 8, 2019)(entered order; the stipulation was submitted ats Dkt. 36 on April 5, 2019).
[4] Case 2:18-cv-00672, Dkt. 46 (E.D. Tx.)(June 5, 2019)(entered order; the stipulation was submitted ats Dkt. 36 on February 28, 2019).

*Uniloc 2017 LLC v. Huawei Device USA, Inc. et al* [5]

> Additionally, the Source Code Computer may be located at the offices of the producing Party's outside counsel, a third party vendor, or any other location mutually agreed by the parties. To the extent practicable, the Parties will reasonably cooperate to coordinate the location of source code review;

Huawei's argument at the case management conference, suggesting that source-code production could <u>only</u> be made in China, is inconsistent with prior positions taken in litigation where Huawei stipulated to production being <u>only</u> made in the United States, for example, at outside counsel's office. Likewise, Huawei's suggestion that such a requirement was coming from the Chinese Ministry (as a state-sponsor of Huawei) is also inconsistent with other Chinese companies.  ZTE – another Chinese-state-sponsored entity in the same space as Huawei – did not require source production in China.  Rather, just like Huawei's prior stipulation, ZTE's source code "may only be located at the offices of the producing Party's outside counsel or its vendors." *See WSOU Investments LLC v. ZTE Corporation et al,* Case No. 6:20-cv-00487, Dkt. No. 83 (W.D. Tx.)(June 1, 2021). More particularly, ZTE declared its source code was also in Dallas. *Id.* at Dkt. 47-1 (Declaration of ZTE USA representative Ray Wood at ¶12: "technical documents and source code are stored at the Upshaw PLLC law firm in Dallas County, Texas."). Moreover, Huawei's suggestion here is inconsistent with public statements where Huawei is "open to transfer 5G technology, including the source code, hardware design secrets etc. to facilitate global innovation." *See* e.g., https://www.business-standard.com/article/international/huawei-open-to-transfer-5g-tech-for-global-innovation-including-source-code-121021001775_1.html

Huawei's position on source code location, introduced for the first time at the case management conference (and not in advance of the conference), appears to have purely been manufactured for purpose of increasing costs on WSOU.  Huawei has presented no evidence as to why a requirement should be imposed in this case that Huawei did not even request in other cases.

[5] Case 2:18-cv-00509, Dkt. 30 (E.D. Tx.)(April 9, 2019)(entered order; the stipulation was submitted ats Dkt. 29 on April 8, 2019).

WSOU has not found a single protective order where Huawei ever pushed for production of its code in China. Rather, again, Huawei *stipulated* to production at its outside counsel's office.  If Huawei applied the same approach here, that location would be Dallas – the office of its Huawei's lead attorney.

If Huawei's inconsistent position here were not enough, Huawei's proposed language also requires inspection of code in China – even it is already in the U.S.  For example, Huawei has already made its source code available in multiple case in the U.S.  It's already here.  However, Huawei's proposed language allows Huawei to only make such code available in China if it also resides in China. This is the express scenario discussed at the case management conference.  If the code is already here, there is no reason to require travel to China to review.

Huawei likewise does not explain how its own engineers located in the United States are allowed to view and edit source code at its research facilities located here.

### d.    The Number of Pages of Source Code Printout – Section 10(d)

The Court's standard protective order does not include a default number of printouts for Source Code.  To avoid a dispute down the road as to whether a requested amount is reasonable, WSOU proposed the amount ordered by the Court in resolving one of the few disputes between WSOU and Microsoft – 1,000 pages for each software release.  *See* 6:20-cv-454, Dkt. 71 at 10. WSOU believes the Court's resolution of such a dispute between WSOU and Microsoft is, also, appropriate for the cases between WSOU and Huawei.

### e.    The Wait Period for Source Code Printouts – Section 10(d) and 10(g)

Huawei has inserted an unreasonable request for three (3) business days for source code printouts.  In source-code review, it is common for a source code review to make PDF on the source code review computer to designate a print request. Under Huawei's proposal, if WSOU make such a PDF (for printing) on Thursday, WSOU must wait until Tuesday of the next week to receive a printed copy of that PDF. And, likewise, if Huawei objects to that PDF being printed, Huawei's proposal kicks Court intervention until another waiting period of three (3) business day

for a meet and confer – further delaying the printout being received.  In sum, an objection by Huawei will unreasonably delay print request being received by more than a week.

WSOU's proposal more reasonably allows a business day to printout the PDF and another day to meet and confer if there is a dispute. The idea here is that a source code reviewer can request a printout and come back the next day to obtain the actual copy.  Source code review is a sensitive process whereby reviewers cannot be expected to wait more than a week to obtain printouts. Huawei's problems are even more exacerbated when combined with the requirement for travel to China.

### IV.     Who Can Access Designated Material – Section 15

Section 15 deals with individual that can access Designated Material.  WSOU proposes adopting verbatim the Court's language from the sample protective order, which includes the following people: "a current or former officer, director or employee of the producing Party or a current or former officer, director, or employee of a company affiliated with the producing Party." Huawei seeks to remove the above-highlighted individuals as well as former employees. Such a removal will severely complicate the case with Huawei productions – since there are multiple affiliated Huawei companies. Huawei has no legitimate reason to complicate the case – other than drive up costs.

### V.     Confidentiality Obligations – Section 22

Section 22 deals with a triggering event for the destruction of DESIGNATED MATERIAL. Huawei proposes removing a dismissal of the case *without prejudice* from the triggering event.  Thus, should a dismissal without prejudice occur (for whatever reason), neither party would automatically be required to destroy DESIGNATE MATERIAL.  Rather, Huawei's proposal allows either party to indefinitely keep DESIGNATE MATERIAL following a dismissal without prejudice.  WSOU respectively submits that such an approach is non-sensical.

## Huawei Defendants' Position

Defendants respectfully request that the Court enter the disputed Protective Order (attached as Appendix A), including Defendants' proposals (shown in blue), and reject Plaintiff WSOU's proposals (shown in yellow).  As will be shown below, the majority of the disputes between WSOU and Defendants have already been addressed by the Court in *WSOU Investments, LLC D/B/A Brazos Licensing and Development v. ZTE Corporation, et al*., Civil Action Nos. 6:20-cv-00487-ADA through -00497-ADA (collectively, "the ZTE litigations").  While the Court rejected ***all*** of WSOU's proposals in the ZTE litigations, WSOU inexplicably makes many of the same proposals here.  For the same reasons as in the ZTE litigations, WSOU's proposals should be rejected by the Court, and Defendants' proposals (which generally mirror the language from the Court's Sample Protective Order for Patent Cases ("Sample Order")) should be adopted by the Court.

1. **WSOU's Proposed Changes to Section 5(a):  Scope of "Outside Counsel"**

While Defendants contend that "CONFIDENTIAL" material under Section 5(a) of the disputed Protective Order should only be disclosed to "Outside counsel of record in this Action for the Parties," which is the language from the Court's Sample Order, WSOU seeks to expand that disclosure to include the additional category of "outside counsel retained for the purpose of this litigation."   Appendix A ("Appx.") at ¶ 5(a).  Yet the inclusion of this overly broad and impermissibly vague language was already rejected by the Court in the ZTE litigations.  *Compare* Civil Action No. 6:20-cv-00487-ADA, Dkt. 74-1 at ¶ 5(a) *with* Dkt. 83, at ¶ 5(a).  For the same reasons, the Court should reject the inclusion of this problematic language in the disputed Protective Order in these cases.

Specifically, and as correctly noted by the defendants in the ZTE litigations, "[t]he plain language of WSOU's deviations create unnecessary ambiguities (at best), and unwarranted

disclosure expansions (at worst)." *See, e.g.*, Civil Action No. 6:20-cv-00487-ADA, Dkt. 74, at 15. As one example, WSOU's inclusion does not limit disclosure of confidential material to counsel **retained by the Parties**. Such language could thus allow unidentified entities who have an interest in WSOU or in these litigation to have access to Defendants' confidential material. As another example, WSOU's inclusion allows disclosure of confidential material to counsel "retained for the purpose of this litigation." Appx. A at ¶ 5(a). This language, divorced from the requirement from the Court's Sample Order that outside counsel be "of record in this Action," would again allow unidentified counsel retained by WSOU "for the purpose of this litigation" to have access to Defendants' confidential material.

In light of these exemplary "disclosure expansions," and as the Court has already rejected WSOU's proposed deviation from the Court's Sample Order, Defendants request that the Court again reject WSOU's improper revision to Section 5(a) of the disputed Protective Order.

## 2.     WSOU's Proposed Changes to Section 5(e):  Outside Consultant Dispute and Notice

While Defendants contend that the time periods relating to the disclosure of confidential material to outside consultants/experts as set forth in the Court's Sample Order are appropriate for the Protective Order in this case, WSOU again proposes to alter the Court's Sample Order and to introduce a contradictory provision allowing disclosure of confidential information even before an objection is resolved. As with WSOU's proposed revisions to Section 5(a) above, however, WSOU's proposed revisions to Section 5(e) of the Court's Sample Order have already been rejected by the Court in the ZTE litigations (*compare* Civil Action No. 6:20-cv-00487-ADA, Dkt. 74-1, at ¶ 5(e) *with* Dkt. 83, at ¶ 5(e)). Those revisions should likewise be rejected here.

There is no basis to shorten the time periods by which the parties can vet the *curriculum vitae* of the opposing party's consultants/experts before the confidential material of the disclosing

party is provided to those consultants/experts.  There is likewise no basis to require the parties to

request a hearing when and if a party files a motion with the Court objecting to the opposing party's

consultants/experts.  More problematic, however, is WSOU's inclusion of the final statement that

indicates that no disclosure of confidential materials shall be made to an opposing party's

consultant/expert until all objections are resolved "or expiration of the 7-day period if no motion

is filed."  Appx. A at ¶ 5(e).

This addition by WSOU conflicts with the agreed portions of Section 5(e), as the objecting

party is ***not required to file a motion*** within the 7-day period (as proposed by WSOU; 10 days as

set forth in the Court's Sample Order and as proposed by Defendants).  Rather, the objecting party

is merely required "to object and notify the receiving Party in writing that it objects to disclosure

of Protected Material to the consultant or expert" (*Id.*), after which time the parties must meet and

confer to try and resolve the objection.  If the parties are unable to resolve the objection, only then

is the objecting party required to file a motion with the Court.  As such, WSOU's inclusion above

conflicts with the agreed language of Section 5(e) from the disputed Protective Order and would

allow disclosure of the objecting party's confidential material before the objection is resolved.[6]

For these reasons, as well as fact that the Court has already rejected WSOU's proposed

deviation from the Court's Sample Order, Defendants request that the Court again reject WSOU's

unsupported and contradictory edits and additions to Section 5(e) of the disputed Protective Order.

---

[6]     Notably, counsel for Defendants pointed out this contradictory issue to counsel for WSOU during the parties' back-and-forth correspondence on the disputed Protective Order.  However, counsel for WSOU never responded to this problem with WSOU's proposed deviation from the Court's Sample Order.

**3.      WSOU's Proposed Changes to Section 10(a):  Source Code Review Computers**

WSOU again seeks to add additional and unnecessary requirements to the Court's Sample Order relating to the review of (what will be exclusively) Defendants' source code.  Specifically, WSOU seeks to add the requirement that Defendants provide "three secure review computers" and that the "Source Code production applicable to each of the [twelve] above-captioned cases [be] accessible from each review computer."  Appx. A at ¶ 10(a).  Additionally, WSOU seeks to add a requirement that "[a] display screen or monitor of a size of at least seventeen inches shall be provided by the producing Party for each review computer."  *Id*.

As with WSOU's other unnecessary/problematic revisions and additions addressed above, the Court has already reviewed and rejected these specific additions to the Court's Sample Order in the ZTE litigations.  *Compare* Civil Action No. 6:20-cv-00487-ADA, Dkt. 74-1, at ¶ 11(a) *with* Dkt. 83, at ¶ 11(a).  The Court should do the same here, as there is no reason unique to these litigations to depart from the Court's Sample Order to add the overly burdensome requirements that WSOU seeks to include.

**4.      WSOU's Proposed Changes to Section 10(a):  Source Code Review Location**

As before, WSOU seeks to add additional requirements to the disputed Protective Order in these cases that are not present in the Court's Sample Order and that have already been rejected by the Court in the ZTE litigations.  As if that were not enough, WSOU is further attempting to circumvent the Court's previous order from the Case Management Conference between the parties on this very issue.

Specifically, with regard to WSOU's proposed requirement that "[t]he Source Code Computers will permit review of the source code in the Dallas office of McGuireWoods, or as otherwise agreed" (Appx. A at ¶ 10(a)), counsel for Defendants already raised the issue of where

source code that resides only in China will be produced during the Case Management Conference, as follows:

> One thing I do want to note with regard to source code.  I think it's much easier on the Chinese Ministry hurdles with regard to source code if the Chinese Huawei defendant in each case be required to produce source code if necessary if we can produce that in Hong Kong and make that available for inspection.  There are a lot of hurdles to bring that into the United States.  Huawei – the Chinese Huawei defendants are not a plaintiff in this case, Your Honor.  They are a defendant.  And my understanding on the case law in those circumstances is that the plaintiff needs to go to defendant's location where the source code is.

10/16/20 Tr., at 13:4-14.  The Court responded, stating "I will tell the plaintiff that if the Chinese entities are willing to make the source code available by the plaintiff's counsel going to Hong Kong and that's all it takes, ***they need to take that deal and run with it*** because I'm dealing with this in other matters where the Chinese Ministry has refused to even allow that to happen for other reasons.  But I'm – but now having said that, let me hear from – let me hear from the plaintiff." *Id*. at 13:17-24 (emphasis added).

WSOU's counsel replied, "[w]ell, I guess what I would say about that is ***if that's the best we can get, then I guess that's what we're going to have to deal with***.  I haven't run into that before, but I haven't had Huawei as a defendant before.  ***If that's your experience, Your Honor, yeah***." *Id*. at 13:25—14:4 (emphasis added).  The Court continued, holding:

> And so if [Defendants' counsel] has made what they – I think is a generous offer that the source code in all 12 cases will be produced on the basis – under the only requirement that it be produced in Hong Kong – I know that I had many cases involving Chinese defendants and/or Chinese witnesses where I had to go to Hong Kong or Macau to take the depositions.  So I understand what's going on.  And [Defendants' counsel], I want to thank you for working that deal out and making that happen, and I think that's a very – in this situation I think that's a very good compromise.  And I will – ***I will say that that's where I will ask the defendant[s] to produce the source code***.

*Id.*, at 14:18-22 (emphasis added).[7]

Despite that the fact that this issue was specifically addressed and resolved by the Court at the outset of these cases nearly a year ago, WSOU ignores the Court's order and attempts to include a provision that is directly contrary to the Court's directive above.  As this is a settled issue, the Court should reject WSOU's additional requirement that is not only inconsistent with the Court's Sample Order, but also contrary to the Court's order above.

As to the other language that WSOU attempts to add into this Section relating to a "public health or other emergency," that language was again proposed by WSOU in the ZTE litigations and was already rejected by the Court.  *Compare* Civil Action No. 6:20-cv-00487-ADA, Dkt. 74-1, at ¶ 11(a) *with* Dkt. 83, at ¶ 11(a).  The Court should do the same here.  While Defendants are not opposed to similar pandemic-related language, and indeed offered to include such additional language in this Section (while still recognizing the Court's order on the production of Huawei's China-based source code in Hong Kong) (*see* Appx. A at ¶ 10(a)), WSOU refused Defendants' attempted compromise – no doubt to try and circumvent the Court's previous order from the Case Management Conference.

Defendants' proposal tracks the Court's previous order on the production of source code, and only indicates that the parties will work to devise an alternative solution if travel from the U.S. to Hong Kong is prohibited.  However, should the Court not wish to add any language in the disputed Protective Order related to the COVID-19 pandemic, Defendants request that the Court

---

[7]      In further affirming its order, the Court clarified that its order would apply only to Defendants' source code that was located in China, and not source code that was in the possession of Defendants' U.S.-based entities.  *See id.* at 14:24—15:16.

adopt Section 10(a) of the disputed Protective Order as proposed by Defendants, excluding Defendants' proposed inclusion relating to the pandemic.[8]

## 5. The Parties' Proposed Changes to Section 10(d):  Source Code Printouts

The parties are generally in agreement that there should be some initial limitation on the number of pages of source code that can be printed by the reviewing party (which, in this case, will be WSOU).  Not surprisingly, WSOU urges an extremely high number – 1000 pages per software release – with no restriction on the number of consecutive pages that can be printed.  As such, under WSOU's proposal, WSOU can request a production of 1000 **consecutive** pages of Defendants' source code from every software release – and can then request additional source code printouts from Defendants, which, pursuant to the agreed language from the disputed Protective Order, will "not be unreasonably denied." Appx. A at ¶ 10(d).[9]

Given that the agreed portion of the disputed Protective Order provides that WSOU can seek to print additional pages beyond either party's proposed limits, Defendants contend that a lower initial limit (*i.e.*, 500 pages) is the more appropriate vehicle to protect Defendants' sensitive and valuable source code.  Moreover, a consecutive-page limitation is also necessary to prevent WSOU from printing large blocks of Defendants' source code, which, if inadvertently disclosed outside of these litigations, would cause significant damage to Defendants.  As WSOU has not yet reviewed Defendants' source code, any argument that it requires (at a minimum) 1000 pages per

---

[8]    Defendants likewise request that the Court adopt Defendants' addition to Section 10(b) in the disputed Protective Order, which simply tracks the language from the Court's Sample Order (in Section 11(a)), requiring that "the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel *or its vendors*." (emphasis added).

[9]    Notably, WSOU's 1000-page proposal was already rejected by the Court in the ZTE litigations.  *Compare* Civil Action No. 6:20-cv-00487-ADA, Dkt. 74-1, at ¶ 11(h) *with* Dkt. 83, at ¶ 11(h).

software release is pure speculation, and is offset by the agreed language allowing WSOU to request more printed pages should the unique situation arise.

As to the second dispute between the parties regarding the production of source code, and specifically WSOU's proposal that "the Parties shall meet and confer in good faith within one (1) business day of the objection" to WSOU's request for printed pages of Defendants' source code (*see* Appx. A at ¶ 10(d)), such a proposal is not reasonable, specifically given the Court's previous order that any production of Defendants' source code will occur in Hong Kong.   Given the demands of counsel (on this and other matters), requiring a meet and confer in one business day after an objection by Defendants is made to the scope of any print request by WSOU (which, according to WSOU's proposal, must further be made "at the time of inspection") is not practical, and could conceivably put both parties in jeopardy of violating such an order if the appropriate counsel are   not available one business day after an objection is raised.

Defendants' proposal, to the contrary, allows the parties a reasonable amount of time (*i.e.*, "three (3) business days") to meet and confer after an objection is made.  Defendants' proposal also sets forth a specific schedule regarding when (in this instance) Defendants must object to a print request by WSOU (which, as noted above, will be made in Hong Kong), and a specific schedule setting forth when, after the meet and confer occurs, WSOU must go to the Court for resolution of the objection.  *See* Appx. A at ¶ 10(d) (setting all deadlines at "three (3) business days").  Defendants have previously employed similar schedules in numerous cases in the Eastern District of Texas, and the protocols have worked well.  *See e.g*., Case No. 2:18-cv-00073-JRG-RSP, Dkt. 29, ¶ 10(h); and Case No. 2:17-cv-00746-JRG-RSP, Dkt. 40 ¶ 10(h).   As such,

Defendants request that the Court reject WSOU's proposed inclusions to Section 10(d), and instead accept those proposed by Defendants.[10]

6.      **Defendants' Proposed Change to Section 14:   Use of Designated Materials at Depositions of Former Employees**

Defendants contend that confidential information of a producing party should not be shown to ***former*** (non-officer or director) employees of the producing party during a deposition of that former employee.  As the disputed Protective Order currently reads (and as proposed by WSOU), confidential information of a producing party can be shown to any former employee of the producing party, regardless of whether that former employee authored or was an addressee or copy recipient of such information, or whether that former employ ever had access to such information in the normal course of the former employee's employment.  Defendants contend that such disclosure can serve no legitimate purpose, and thus the threat of inadvertent disclosure of such confidential information by the former employee outweighs any benefit to the receiving party.

To be clear, Defendants do not object to such confidential information being shown to a former employee that authored or was an addressee or copy recipient of such information, or that had access to such information in the normal course of the former employee's job responsibilities. Defendants further do not object to such confidential information being shown to a former officer or director of the producing party, given those individuals' (former) high levels of position and responsibility within the producing party.  However, a former, non-officer/director employee who has no relation to a producing party's confidential information should not, without more, be shown such confidential information during a deposition.

---

[10]      The parties' dispute in Section 10(g) of the disputed Protective Order relates back to the dispute set forth above with regard to Section 10(d), and should be resolved by the Court consistent with the resolution of the parties' dispute regarding Section 10(d).

Defendants further contend that confidential information of a producing party should not be shown to "a current or former officer, director or employee of a company ***affiliated with*** the producing Party" (Appx. A at ¶ 14), without that individual qualifying for access under one of the other categories delineated in Section 14 of the disputed Protective Order.  As an initial matter, the phrase "company affiliated with the producing Party" is undefined, and is subject to multiple interpretations.  Moreover, there may be business reasons why a current or (especially) former officer/director/employee of an "affiliate" should not be privy to confidential information of the producing party during a deposition.  As such, Defendants contend that such individuals must qualify for access to such confidential information pursuant to another category set forth in Section 14 before being shown such information during a deposition.

Accordingly, Defendants' request that the Court adopt Defendants' proposed revisions to Section 14 as set forth in the disputed Protective Order.

**7.      Defendants' Proposed Change to Section 22:  Destruction of Designated Material Following a Dismissal Without Prejudice**

Defendants contend that a "Final disposition," which triggers the requirement to destroy "all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof" (Appx. A at ¶ 22), should not include dismissals "without prejudice," as proposed by WSOU, as such dismissal are not truly "final."  Any such claims that are dismissed without prejudice can be brought again, such that the receiving party should be allowed to keep the categories of information delineated above until the case is dismissed with prejudice, and/or the issuance of a "final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action."  *Id*.

Accordingly, Defendants' request that the Court adopt Defendants' proposed revisions to

Section 22 as set forth in the disputed Protective Order.


DATED:  July 30, 2021                    Respectfully submitted,

                                         */s/  Ryan Loveless*
                                         Mark D. Siegmund
                                         State Bar No. 24117055
                                         mark@waltfairpllc.com
                                         **Law Firm of Walt, Fair PLLC.**
                                         1508 North Valley Mills Drive
                                         Waco, Texas 76710
                                         Telephone: (254) 772-6400
                                         Facsimile: (254) 772-6432

                                         James L. Etheridge
                                         Texas State Bar No. 24059147
                                         Ryan S. Loveless
                                         Texas State Bar No. 24036997
                                         Travis L. Richins
                                         Texas State Bar No. 24061296
                                         Brett A. Mangrum
                                         Texas State Bar No. 24065671
                                         Jeffrey Huang
                                         ETHERIDGE LAW GROUP, PLLC
                                         2600 E. Southlake Blvd., Suite 120 / 324
                                         Southlake, Texas 76092
                                         Telephone: (817) 470-7249
                                         Facsimile: (817) 887-5950
                                         Jim@EtheridgeLaw.com
                                         Ryan@EtheridgeLaw.com
                                         Travis@EtheridgeLaw.com
                                         Brett@EtheridgeLaw.com
                                         JeffH@EtheridgeLaw.com


                                         *Counsel for Plaintiff WSOU Investments, LLC*

DATED:  July 30, 2021                              Respectfully submitted,

                                                   */s/ Jason W. Cook*
                                                   Jason W. Cook
                                                   Texas Bar No. 24028537
                                                   Shaun W. Hassett
                                                   Texas Bar No. 24074372
                                                   **McGuireWoods LLP**
                                                   2000 McKinney Avenue, Suite 1400
                                                   Dallas, TX 75201
                                                   Telephone: (214) 932-6400
                                                   jcook@mcguirewoods.com
                                                   shassett@mcguirewoods.com
                                                   Tyler T. VanHoutan
                                                   Texas Bar No. 24033290
                                                   **McGuireWoods LLP** 600
                                                   Travis St., Suite 7500
                                                   Houston, TX 77002
                                                   Telephone: (713) 571-9191
                                                   tvanhoutan@mcguirewoods.com

                                                   J. Mark Mann
                                                   Texas Bar No. 12926150
                                                   G. Blake Thompson Texas
                                                   Bar No. 24042033
                                                   **MANN | TINDEL | THOMPSON**
                                                   300 West Main Street
                                                   Henderson, Texas 75652
                                                   Telephone: (903) 657-8540
                                                   mark@themannfirm.com
                                                   blake@themannfirm.com

                                                   *Counsel for Defendants Huawei Technologies Co.,*
                                                   *Ltd., Huawei Technologies USA, Inc., Huawei*
                                                   *Device Co. Ltd. (f/k/a Huawei Device (Dongguan)*
                                                   *Co.), Huawei Device (Shenzhen) Co., Ltd. (f/k/a*
                                                   *Huawei Device Co. Ltd.) and Huawei Device USA*